IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADONIS HOUSE, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 10 C 1802 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Adonis House ("House") was convicted and sentenced for two counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. House filed a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies House's motion.

**BACKGROUND**

The following factual background is based on the records in the underlying criminal proceedings.[1] On August 31, 2006, a grand jury sitting in the Northern District of Illinois indicted House on two counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. (R. 1) Eugene Steingold ("Steingold") first appeared on House's behalf on September 12, 2006, and he represented House at the arraignment, trial, and sentencing. (R. 9, Sent. Tr. at 3.) On June 4, 2007, the jury trial began. During jury selection, the government informed the Court that House allegedly had tried to contact the government's witness, Sylvester Avery ("Avery"), through an intermediary, Mary Brown ("Brown"), with the intent to persuade Avery against testifying. The

---

[1] The Court cites to the underlying criminal case, 06 CR 631-2, as "R." The Court cites to the briefs filed in this habeas case, 10 C 1802, as "Hab. R."

Court admonished House not to have any contact with witnesses in the case. On June 7, 2007, the jury convicted House on both counts. (R. 79.)

Before the sentencing hearing the Probation Officer prepared a Presentence Investigation Report ("PSR"). The PSR recommended a base offense level of 34 based on the drug amount in this case as well as the stipulated drug amount from another case pending against House. (Supp. PSR at 2.) The PSR also indicated that House's base offense level should be increased two levels, from 34 to 36, for obstruction of justice. (PSR at 4, 5.) The Probation Officer explained that House's attempt to contact Avery was obstruction of justice under § 3C1.1 of the Sentencing Guidelines. (*Id.*) Steingold argued against the two point increase in his sentencing memorandum. (R. at 94.)

The Court sentenced House on December 13, 2007. (*Id.* at 97.) At this time the Court asked House if he was satisfied with Steingold's representation at trial and House stated "to a certain extent," but went on to articulate discontent with Steingold's refusal to file certain motions. (Sent. Tr. at 4, 5.) Specifically, House wanted Steingold to file motions requesting a reduced sentence based on House's incarceration in a non-federal facility, and also credit for time served. House did not otherwise complain about Steingold's representation. (*Id.* at 5.)

After starting with the base offense level of 34, the Court addressed the two-level increase for obstruction of justice. Steingold claimed that House had no intention to threaten Avery, but rather tried to contact Avery through Brown to aid Steingold's investigation of the case. (*Id.* at 12, 13.) He also objected to testimony at sentencing by FBI Special Agent Helen Dunn ("Agent Dunn"), who investigated the obstruction of justice issue, on the basis that she could not provide specific details about the dates and times of the conversations between House, Avery, and Brown. (*Id.*) Because these objections lacked merit, the Court allowed Agent Dunn to testify at sentencing.

Agent Dunn testified that he spoke with Avery sometime in June 2007 in the U.S. Attorney's Office. (*Id.* at 17.) According to Agent Dunn, Avery told her that he ran into Brown at the scene of a traffic accident, where Brown asked him if he was going to testify against House at trial; Avery told Brown that he did not know what she was talking about. (*Id.* at 18.) Also, when Agent Dunn spoke with Brown in June 2007, a few days before House's trial, Brown confirmed that House asked her to tell Avery not to testify, and she carried out this request. (*Id.* at 19, 20-21.) Agent Dunn further testified that when she spoke with Brown again a few months after the June 2007 trial, Brown told her that House was upset with Brown for telling the FBI about these conversations. (*Id.* at 22.)

Steingold objected based on hearsay to Agent Dunn's testimony but the Court overruled the objection. The Court found that to obstruct justice the defendant's behavior need not be threatening; it was sufficient if the defendant attempted to influence or persuade someone to act in a certain way. (*Id.* at 25-26.) Accordingly, the Court applied a two-level enhancement for obstruction under Sentencing Guideline § 3C1.1. (*Id.* at 26.)

The offense level thus went from a 34 to 36, and House had criminal history category of I, resulting in a sentencing range of 188-235 months. The Court sentenced House to 188 months' imprisonment for Counts 2 and 3, which would run concurrently. (Sent. Tr. at 49-50.) House then filed a timely notice of appeal with the U.S. Court of Appeals for Seventh Circuit, arguing that the Court erred by applying the obstruction of justice enhancement and by failing to consider *Kimbrough v. U.S.* and Section 3553(a) factors in sentencing. *U.S. v. House*, 551 F.3d 694 (7th Cir. 2008). The Seventh Circuit affirmed House's conviction and sentence.

On March 22, 2010, House timely filed this § 2255 motion in which he raises several ineffective assistance of counsel claims.

## STANDARD OF REVIEW

House is proceeding pro se, so the Court construes his filings broadly. *Kafo v. U.S.*, 467 F.3d 1063, 1066 (7th Cir. 2006). Section 2255 allows a prisoner convicted of a federal crime to move the district court that imposed the sentence to vacate, set aside, or correct the sentence. This relief is only available in cases where there have been jurisdictional or constitutional errors that result in a "complete miscarriage of justice." *Harris v. U.S.*, 366 F.3d 593, 594 (7th Cir. 2004). It is an "extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. U.S.*, 476 F.3d 518, 521 (7th Cir. 2007).

## DISCUSSION

House argues that violations of his constitutional right to effective assistance of counsel resulted in an unjustifiably high sentence. Specifically, House argues that Steingold: (1) failed to discuss the case with him, (2) failed to adequately prepare for trial and sentencing by not interviewing witnesses, and (3) failed to object to the inclusion of drug quantities as "relevant conduct" in determining the applicable guideline range.

**I.     Procedural Default**

As an initial matter, the Court must determine whether House procedurally defaulted on these claims by failing to raise them on direct appeal. Generally, ineffective assistance of counsel claims are properly raised in a § 2255 motion rather than on direct appeal. *McCleese v. U.S.*, 75 F.3d 1174, 1177 (7th Cir. 1996). This is because extrinsic evidence beyond the trial record often helps develop the claim. *Id.* at 1178; *Bond v. U.S.*, 1 F.3d 631, 635 (7th Cir. 1993).

Despite this, the petitioner must bring a § 2255 motion alleging ineffective assistance of counsel at the "earliest feasible opportunity." *Dugan v. U.S.*, 18 F.3d 460, 464 (7th Cir. 1994). A § 2255 motion must be brought on direct appeal, and the petitioner procedurally defaults for failing to do so, "[w]here [the petitioner] offers no extrinsic evidence to support his claim of ineffective assistance of counsel and he was represented by different counsel on appeal." *McCleese*, 75 F.3d at 1178; *U.S. v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991) (petitioner must bring § 2255 at earliest opportunity but "if he wants to support the claim with facts that require evidence to establish he will be well advised to wait till the postconviction stage"). If the petitioner's § 2255 motion cannot point to extrinsic evidence (evidence outside the trial record) to support the ineffective assistance of counsel claim, it should have been brought on direct appeal instead of in a § 2255 motion. *Dugan*, 18 F.3d at 464. Similarly, if the facts of the ineffective assistance of counsel claims were "known to the defendant, and [were] a matter of public record" during the trial, it is too late to allege such claims in a § 2255 motion. *Taglia*, 922 F.2d at 418.

Petitioner's failure to raise ineffective assistance of counsel claims based solely on the trial record can be excused under two exceptions. First, where the petitioner can show "cause and prejudice." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). That is, an external influence beyond petitioner's control prevented bringing the claim on direct appeal ("cause") and this resulted in "actual and substantial disadvantage, such that [petitioner's] entire trial was tainted with error of constitutional proportions" ("cause"). *See, e.g., U.S. v. Jackson*, No. 07 C 6409, 2008 WL 4814919, at *2 (N.D. Ill. Nov. 4, 2008) (Kocoras, J.). Second, where a fundamental "miscarriage of justice" results from not reviewing the petitioner's claims. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). This applies, for example, where there is "probative evidence [that petitioner] has a colorable claim

5

of factual innocence." *Id.* (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)); *Boyer v. U.S.*, 55 F.3d 296, 300 (7th Cir. 1995) ("miscarriage of justice" applies to claims of factual innocence, not legal innocence).

Here, House had different counsel on his trial (Steingold) and appeal (Bradley Baglen) and did not raise his ineffective assistance claims on direct appeal. (Hab. R. 1, Section 2255 Mot. at 6-7.) Thus, his § 2255 motion is procedurally defaulted if he presents no evidence beyond the trial and sentencing record to support his ineffective assistance of counsel claims. His § 2255 motion states that the records he needed to assert those claims were not ready on direct appeal. (*Id.* at 6.) But nowhere in House's § 2255 motion does he specify what records he was waiting for and how these records would support his claims.

On December 19, 2007, six days after his sentencing, House filed a motion requesting a new attorney for his appeal ("New Attorney Motion"). (R. 98.) This motion, which is part of the record of the underlying criminal case, contains substantially the same complaints against Steingold that House asserts in this § 2255 motion.

First, House presents no extrinsic evidence regarding the claim that Steingold inadequately communicated with him. House brought up this identical complaint in the New Attorney Motion by stating his frustration with Steingold for not "meeting with him to discuss the case," despite House's repeated requests. (R. 98 at 4.) In fact, House's § 2255 motion states that he filed this "motion/letter" detailing Steingold's alleged deficiencies, and goes on to complain that the Court should have "inquired into this matter" during in the underlying criminal case. (Hab. R. 4, Section 2255 Mot. at 13.) House clearly complained about Steingold's lack of communication during his underlying case. Now, after direct appeal, House does not point to any extrinsic evidence that would

further elucidate this claim; in essence, he relies on the same allegations set forth in his New Attorney Motion. As such, House had the full opportunity to raise this ineffective assistance of counsel claim on direct appeal, but chose not to do so. House is therefore barred from raising it here.

Second, House maintains that Steingold failed to adequately prepare for trial by neglecting to interview and call witnesses. Specifically, he argues that by interviewing Mary Brown, Steingold would have been able to defeat the two-point increase for obstruction of justice. (Hab. R. 4, Section 2255 Mot. at 14.) The New Attorney Motion states that Steingold provided ineffective representation because he "failed to call even one defense witness" and failed to "interview and cross examine witnesses for the defendant prior to trial." (R. 98 at 5, 8.) These post-sentencing complaints could also have been pursued on direct appeal. And House cannot identify extrinsic evidence that was unavailable during his direct appeal that would now allow him to develop this claim. Finally, House's vague statement in his Section 2255 Motion that he did not bring his ineffective assistance claims because records were not available is not specific or reliable enough to save him from procedural default. *See Bond*, 1 F.3d at 636 (petitioner claimed that counsel performed deficiently because he was distracted by an impending ARDC hearing and specifically pointed to the need to have documentation of the disciplinary proceeding, which was not part of the trial record); *see also U.S. v. Jackson*, 930 F. Supp. 1228, 1233 (N.D. Ill. 1996) (Aspen, J.) (ARDC report on counsel's past discipline for alcoholism was extrinsic evidence for ineffective assistance claim).

Third, House contends that Steingold's failure to object during sentencing to drug quantities in determining "relevant conduct" was unreasonable under *Strickland*. This, too, is procedurally barred because House should have brought this claim on direct appeal. An ineffective trial assistance claim based upon counsel's failure to object at certain points during trial or sentencing is part of the

7

trial record and does not depend upon extrinsic evidence. *See Dugan*, 18 F.3d 460 ("no reason" why appellate attorney could not raise ineffective assistance of trial counsel claim regarding failure to object to exhibits and statements); *see, e.g., Sims v. U.S.*, 71 F. Supp. 2d 874, 877 (N.D. Ill. 1999) (Alesia, J.) (affidavits contained no material facts not in sentencing transcript about failing to call mitigating witnesses, so procedurally barred). Here, the trial record provides all that is needed to evaluate House's ineffective assistance claim against Steingold for failing to object during sentencing. Because it would have been feasible for him to assert that claim on direct appeal, he is procedurally defaulted from raising it now.

Nor do the two exceptions to procedural default apply to any of these claims. The Court can dispose of the "cause and prejudice" exception because House's motion provides no reason for failing to assert these claims on direct appeal and does not suggest an external influence prevented him from asserting these claims. Plus, House's conclusory excuse that he was waiting for "records" to become available is insufficient. *See, e.g., Jackson*, 2008 WL 4814919, at *2 (petitioner's conclusory cause and prejudice allegations not enough to satisfy "specific showing of their existence") (citing *Norris v. U.S.*, 687 F.2d 899, 900-04 (7th Cir. 1982)). Finally, House's asserts a legal defense of entrapment, and does not dispute his own factual innocence. (Hab. R. 4 at 12.) (admitting he sold crack cocaine). The miscarriage of justice exception, however, only applies to claims of factual innocence, which House does not challenge. *Boyer*, 55 F.3d at 300. House does not meet this exception either. As such, House is procedurally barred from bringing these claims.

## II. Ineffective Assistance of Counsel

Even assuming no procedural default, House is not entitled to relief on his ineffective assistance of counsel claims. As discussed, House claims that Steingold, his attorney at trial and

8

sentencing, failed to prepare and investigate the case, as well as object to the inclusion of drug quantities as "relevant conduct" in determining the applicable guideline range. (Hab. R. 1, Section 2255 Mot. at 5-6.)

To prove an ineffective assistance of counsel claim House must show (1) that Steingold's performance fell below an objective standard of reasonableness, and (2) that Steingold's deficiencies prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). As for the first prong (competence), the Court is highly deferential to Steingold and will assume that the Steingold's actions fell within "the wide range of reasonable professional assistance." *Id.* at 689. The Court must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 688-89. In other words, the Court must presume that "counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." *U.S. v. Traeger*, 289 F.3d 461, 472 (7th Cir. 2002). As for the second prong (prejudice), House must demonstrate "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### A. Failure to Discuss the Case

House first claims that Steingold's failure to discuss the case and evidence with him constitutes ineffective assistance of counsel. House, however, presents insufficient factual allegations to satisfy either prong of the *Strickland* test.

At sentencing House stated that he believes Steingold should have filed motions seeking a reduction in his sentence based on incarceration in a non-federal facility and credit for time served,

but he was otherwise satisfied with Steingold's representation. The Court explained to House that these motions fell under the jurisdiction of the Bureau of Prisons, not the district court. (Sent. Tr. at 6, 7.) Steingold's failure to file these motions did not amount of attorney incompetence.

Steingold's communications with House were also adequate under *Strickland*'s first prong. House alleges that Steingold inadequately communicated with him: "[Steingold] didn't talk to [House] until it was time for [House] to go to court and that conversation was about five minutes" and "[Steingold] went strictly off the version of the government and charging documents." (R. 4, Section 2255 Mot. at 8.) But House does not explain why the five minute conversation was insufficient or what other evidence Steingold should have examined in addition to the charging document. At no time did House specifically notify the Court of his dissatisfaction with Steingold's communication. The Court is highly deferential to Steingold under the *Strickland* test and House told the Court during his sentencing hearing that with the exception of Steingold's failure to file two specific motions he was satisfied with his representation. The record indicates that Steingold discussed with House the strategic decision not to testify and the issues relevant to the sentencing hearing. (Sent. Tr. at 3-4.) All the evidence before the Court indicates that Steingold's communication with House fell within the "wide range" of professional competence and House's conclusory allegations in his § 2255 motion do not support a different conclusion.

Nor did Steingold's alleged failure to more fully discuss the case with House prejudice the outcome of the trial. The evidence against House was "overwhelming" and "but for" Steingold's alleged errors the result would not have been different. *U.S. v. Jackson*, 983 F.2d 757, 762 (7th Cir. 1993); *see, e.g., U.S. v. Fiore*, No. 00 C 423, 2000 WL 149289, at *3 (N.D. Ill. Feb. 9, 2000) (Holderman, J.) (defendant failed to satisfy "prejudice" prong because testimony from a co-

conspirator and victims linked defendant to the conspiracy). Further, a "mere possibility of prejudice does not qualify as actual prejudice." *Prewitt v. U.S.*, 83 F.3d 812, 819 (7th Cir. 1996). A cooperating witness and undercover FBI agent testified about House's involvement in distributing drugs. The government also presented audio and video evidence to establish House's guilt. There is no basis to find that if Steingold had communicated more with House the outcome of the case would be any different. As a result, House does not state an ineffective assistance of counsel claim for Steingold's failure to communicate.[2]

### B. Failure to Investigate

First, House claims in his affidavit that Steingold erred by failing to interview in preparation for trial. But besides this broad argument, House provides no additional facts in his Section 2255 Motion that fill out this claim. Even if House's allegation that Steingold failed to interview witnesses before trial is true, and the record does not support this statement with anything other than House's assertion, Steingold vigorously and thoroughly cross-examined the government witnesses during the trial. In sum, this "failure to interview" witnesses in preparation for trial allegation is too conclusory and unsupported to be successful, especially since House has the "heavy burden" of showing attorney performance. *U.S. v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001) ("An effective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct."); *see, e.g., Latham v. U.S.*, No. 04-cv-4086, 2009 WL 166978, at *12 (S.D. Ill. Jan. 22, 2009) (the absence of additional facts beyond simply contending

---

[2] House also alleges that Steingold failed to "prepare" the case. (Hab. R. 1, Section 2255 Mot. at 5.) The supporting facts do not identify specifically how Steingold's preparations were lacking.

11

that attorney failed to object to hearsay, request a multiple conspiracy jury instruction, and use prior inconsistent statements in cross-examinations were "too vague to justify relief under § 2255").

Second, in preparation for sentencing, House contends that if Steingold should have interviewed Mary Brown, which would have enabled Steingold to better defend House against the two-level obstruction of justice enhancement.[3] Just like House's "failure to interview" trial witnesses claim, he does not elaborate how a pre-sentencing interview with Brown could have changed the Court's finding of a two-level enhancement. *See, e.g., U.S. v. Saenz*, 923 F. Supp. 1079, 1083 (N.D. Ill. 1996) (claim that attorney failed to interview certain defense witnesses, by itself, is too conclusory to support finding of ineffective assistance of counsel). In addition, under the competence prong, an attorney must make a reasonable investigation of the case, and depending on the circumstances, interviewing certain witnesses is required to competently serve the client; but, in other instances, the facts could support the attorney making the "reasonable decision" that particular investigations are "unnecessary." *Strickland*, 466 U.S. at 691.

Here, as an interview with Brown before her testimony at the sentencing hearing would likely have been unproductive, House cannot establish the prejudice prong. The government fully disclosed to Steingold during jury selection the factual basis for the obstruction of justice enhancement: House told Brown to tell Avery not to testify against him (Sent. Tr. 20-26.) Although House argues that interviewing Brown would have exposed the government's "lies," it is unclear what helpful information would have emerged from the interview. Likewise, neither House's

---

[3] House also contends that Agent Dunn's testimony about House's actions to obstruct justice were improperly based on Brown's hearsay testimony. There is no ineffective assistance of counsel claim here because Steingold objected to this testimony as hearsay. (Sent. Tr. at 14, 20.) For purposes of sentencing, a district court may consider hearsay evidence so long as the evidence possesses a "sufficient indicia of reliability." *U.S. v. Westmoreland*, 240 F.3d 618, 630 (7th Cir. 2001).

affidavit nor motion provide a concrete basis to doubt in any way the application of the two-level enhancement.[4] Because House does not satisfy *Strickland*'s competence and prejudice prongs, there is no ineffective assistance of counsel for these claims.

The record supports Steingold's competent representation during sentencing. House had an opportunity to ask him questions and discuss sentencing issues. (Sent. Tr. 4:6-9.) House stated that he was satisfied with Steingold's representation "to a certain extent." (*Id.* 4:10-12.) As discussed above, at that time House only expressed dissatisfaction with Steingold failing to file two motions, both of which Steingold reasonably believed lacked merit.[5] (*Id.* 4:13-5:13.) Besides these two motions, House indicated he was satisfied with Steingold's representation. (*Id.* 6:23-25.) And at no other status hearing did House indicate any other discontent with Steingold's representation. Similarly, Steingold actively prepared for the sentencing hearing. He filed multiple sentencing memoranda and objected to certain guideline calculations in the PSR. (R. 82, 89, 94, 06 CR 631.) He also objected at the sentencing hearing and cross-examined the government witness about the obstruction of justice enhancement. (Sent. Tr. 22:20-24:17.) Even in addressing the Court before sentencing, House noted his agreement with legal advice Steingold had provided regarding the legal elements of the crime. (*Id.* 38:16-39:3.) There is thus no ineffective assistance of counsel claim with respect to Steingold's representation during sentencing.

---

[4] The Seventh Circuit specifically held that there was an "adequate factual basis for the sentencing enhancement" based on obstruction of justice. *U.S. v. House*, 551 F.3d 694, 700 (7th Cir. 2008).

[5] As for the reduction for incarceration in a non-federal facility, Steingold believed this motion was "not going to go anywhere" and the Court agreed. (Sent. Tr. 5:10-13.) As for the motion for credit for time served, Steingold indicated that there is "no need for a special motion on this," to which the Court also agreed. (Sent. Tr. 5:15-18.)

### C. Failure to Object to Additional Drug Quantities as "Relevant Conduct"

On June 7, 2006, a jury convicted House of two counts of knowingly and intentionally distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. During this same time House was indicted for drug distribution in a different case in front of Judge Kennelly (hereinafter "separate indictment"). For reasons of judicial efficiency, the Court considered the conduct charged in the separate indictment as "relevant conduct" in sentencing in this case. The Court therefore calculated the drug amount based on the special jury form filled out in this case as well as the quantity of drugs in the separate indictment. House contends that Steingold was ineffective for failing to object to House being sentenced based on the "amount of crack cocaine attributable to another drug conspiracy, where petitioner was named in the indictment, but the indictment was dropped." (Hab. R. 4, Section 2255 Mot. at 16.)

Judge Kennelly granted the government's motion to dismiss the case against House because the criminal offenses in that case would be considered in determining the applicable sentencing range in the case before this Court. *U.S. v. House*, 06 CR 629 (R. 72, 74.) The separate indictment was not dropped for any reason relating to the merits of the charges against House; rather, it was dropped because those charges would be incorporated into this Court's sentencing determination. This undermines any notion that Steingold's performance was unreasonable or that House suffered any prejudice. Moreover, the Seventh Circuit affirmed the sentence, which demonstrates Steingold was not at fault for failing to object. As a result, House insufficiently states a *Strickland* claim here too.

### III. Evidentiary Hearing

Neither House's affidavit nor Section 2255 Motion request an evidentiary hearing. In any event, an evidentiary hearing is unnecessary.

14

A district court must grant an evidentiary hearing if the petitioner "alleges facts that, if proven, would entitle him to relief." *Stoia v. U.S.*, 22 F.3d 766, 768 (7th Cir. 1994). But a § 2255 evidentiary hearing is not required if the motion, files, and records "conclusively show" that the prisoner is entitled to no relief. *Bruce v. U.S.*, 256 F.3d 592, 597 (7th Cir. 2001); *Menzer v. U.S.*, 200 F.3d 1000, 1006 (7th Cir. 2000); 28 U.S.C. § 2255(b). So if petitioner's allegations are "vague, conclusory, or palpably incredible," instead of "detailed and specific," an evidentiary hearing is unnecessary. *Bruce*, 256 F.3d at 597. This is precisely the case here. House's claims are not only procedurally defaulted but also invalid on the merits. The Court is able to make these determinations based on the record without having an evidentiary hearing.

## CONCLUSION AND ORDER

For these reasons, the Court denies House's Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 14, 2011